UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EVELYN ACCORDINO

   Plaintiff,

vs.                Case No. 3:05-cv-761-J-32MCR

WAL-MART STORES EAST, L.P.,
and BRIAN JACKSON,

   Defendants.
_____

### ORDER

This "slip and fall" case is before the Court on plaintiff Evelyn Accordino's ("Accordino's") motion to remand for lack of complete diversity and request for attorneys' fees and costs for alleged improper removal. (Doc. 13.) Defendant Wal-Mart Stores East, L.P. ("Wal-Mart") opposes remand, claiming that Accordino has fraudulently joined its store manager, defendant Brian Jackson ("Jackson"), solely to avoid federal court. (Doc. 14.)

**I. Background**

On May 6, 2005, Accordino, a Florida citizen, filed a complaint in state court against Wal-Mart, a Delaware corporation with its principal place of business in Arkansas.[1] The complaint alleges that while Accordino was shopping at the Wal-

---

[1] The state case was filed in the Circuit Court, Eighth Judicial Circuit, In and For Bradford County, Florida, and designated as case number 05-CA-257. Accordino also sued two other Wal-Mart entities - - Wal-Mart Stores, Inc., and Wal-

Mart store in Starke, Florida, on April 27, 2005, "a partially hidden bicycle rack that was obstructing the walkway," caused her to fall and injure herself. (Doc. 1 Ex. A, p. 10, ¶ 9.) The complaint alleges that Wal-Mart breached its duty of care by negligently failing to maintain the premises in a reasonably safe condition; negligently placing business equipment and merchandise on the floor; negligently failing to implement adequate policies and procedures that would prevent such improper placement; and negligently failing to warn of a dangerous condition. The complaint claims damages in excess of $15,000, the state court jurisdictional threshold. (Doc. 1 Ex. A, p. 14.)

On May 18, 2005, Wal-Mart served Accordino with a request for admission that asked her to admit or deny whether she was claiming damages in excess of $75,000, the federal diversity jurisdiction threshold. On June 21, 2005, Accordino responded that she did not have sufficient information to so admit or deny. On the same day, she filed an amended complaint that added as a defendant, Jackson, a Florida citizen. The amended complaint alleges that Jackson discovered Accordino "in a prone position as a result of her fall ... and lifted [her], or directed her to be lifted, into a wheel chair [sic], aggravating the injuries she suffered as a result of the fall." (Doc. 2 ¶ 12.) The amended complaint states a single claim against Jackson for "negligently moving [Accordino] prior to the arrival of

---

Mart Stores East, Inc. - - but voluntarily dismissed them shortly after filing her complaint.

emergency services personnel." (Id. ¶ 14.)

On July 5, 2005, Wal-Mart filed an answer and affirmative defenses on behalf of itself and Jackson, including the affirmative defense that the amended complaint failed to state a claim against Jackson because he, in his individual capacity, did not owe Accordino a duty and did not breach any alleged duty. On July 15, 2005, Accordino moved to strike the answer and certain affirmative defenses, asserting inter alia that Wal-Mart "does not have standing to answer" the negligence claim against Jackson since it was directed to him as a separate party. (Doc. 1 Ex. A., p. 17, ¶ 1.)

On July 14, 2005, Accordino amended her response to Wal-Mart's request for admission by admitting that she was claiming damages in excess of $75,000. Wal-Mart then took her deposition and asked about Jackson's alleged involvement. Accordino testified that after she fell, numerous Wal-Mart employees came to the scene. She could recall specifically a slender light-skinned black male and a heavyset dark-skinned black male, both of whom lifted her into the wheelchair. When asked if Jackson (who was present at the deposition and who Wal-Mart asserts is not and does not appear black) was at the scene, she replied, "I don't remember him at all," "I don't think he was there," and "he doesn't come to my memory as having been there, no." (Doc. 11 Accordino Depo. at 39:8-16.) Accordino also testified, however, that she is blind in one eye, that the fall broke her hip, and that she therefore was in shock and severe pain. Accordino also took

Jackson's deposition and he testified that he was on a Tennessee vacation on April 27, 2005 - - the day Accordino fell.

On August 10, 2005, Wal-Mart filed its notice of removal, asserting that Accordino's and Jackson's deposition testimony shows that there is no possibility that Jackson was negligent as alleged in the amended complaint and that he was fraudulently joined solely to defeat complete diversity. (Doc. 1.) On September 9, 2005, Accordino moved to remand, responding that she has pled a valid claim against Jackson in his individual capacity for negligent movement (albeit a potentially losing one) and can state others such as negligent failure to maintain the store in a safe condition and negligent failure to have policies and procedures to ensure that employees do not move injured patrons. (Doc. 13.)

During the November 8, 2005 hearing on this motion, attorneys for both parties argued that the Court should look to Jackson's deposition transcript to determine his alleged involvement or lack thereof in the events giving rise to Accordino's accident and her injuries.

## II.   The Law of Fraudulent Joinder

A defendant may remove a civil case from state to federal court if the federal court has original jurisdiction. 28 U.S.C. §1441(a). For a federal court to have original jurisdiction over a case alleging only state law claims, as here, there must

be complete diversity and the threshold amount in controversy.[2]  28 U.S.C. §1332(a).

The fraudulent joinder doctrine provides an exception to the citizenship requirement of removal jurisdiction.  Tran v. Waste Mgmt., Inc., 290 F. Supp. 2d 1286, 1292 (M.D. Fla. 2003).  A plaintiff cannot defeat removal by joining a non-diverse defendant having no real connection with the controversy.  Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921).  If a defendant is fraudulently joined, its citizenship is not considered in determining whether complete diversity exists.  Russell Petroleum Corp. v. Environ Prods., Inc., 333 F. Supp. 2d 1228, 1231 (M.D. Ala. 2004).

A defendant alleging fraudulent joinder has the burden of proving the alleged fraud.  Tran, 290 F. Supp. 2d at 1293.  The burden is "a heavy one."  Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998); the defendant must show that there is "no possibility" that the plaintiff would be able to establish a claim against the non-diverse defendant in state court.[3]  Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).

In determining whether there is "no possibility," the court must not weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under

---

[2]  The parties do not dispute that this case meets the threshold amount in controversy given Accordino's admission that she is claiming more than $75,000.

[3]  There are a few other ways to prove fraudulent joinder, see Triggs, 154 F.3d at 1287, but they are irrelevant here.

state law. Tran, 290 F. Supp. 2d at 1293. "In other words, a ... court's authority to look into the ultimate merits of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." Id. (quotations omitted)(emphasis in original). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court. ... The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at 1287 (emphasis in original).

In resolving a claim of fraudulent joinder, the court will proceed in a fashion "similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)." Tran, 290 F. Supp. 2d at 1293 (quoting Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). However, this "jurisdictional inquiry must not subsume substantive determination." Id. "[T]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." Pacheco de Perez, 139 F.3d at 1380 (emphasis added); see also Legg v. Wyeth, 428 F.3d 1317, 1322 (11th Cir. 2005) (finding error where district court relied solely on allegations in plaintiffs' complaint and refused to consider defendants' affidavits in determining whether joinder of

resident defendant was fraudulent).

The court must resolve any contested issues of fact and all uncertainties about state substantive law in favor of the plaintiff. Crowe, 113 F.3d at 1538. However, the court resolves factual controversies in favor of the plaintiff "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Legg, 428 F.3d at 1323 (internal citation and emphasis omitted)(finding no question of fact where plaintiffs failed to submit evidence to dispute sworn statement by defendant). Where a defendant's sworn statements are undisputed by the plaintiff, the court may not "resolve the facts in the [p]laintiff['s] favor based solely on the unsupported allegations in the [plaintiff['s] complaint." Id. In the absence of any proof, the court will not "assume that the nonmoving party could or would prove the necessary facts." Id. (internal citation and emphasis omitted).[4]

---

[4] These standards as to removal and fraudulent joinder reflect sometimes competing policy concerns. See Univ. of S. Ala. v. Amer. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999)("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly ... Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."); Parks v. The New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962)("[A]bsent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination."); Cowart Iron Works, Inc. v. Phillips Const. Co., 507 F.Supp. 740, 744 (S.D. Ga. 1981)("[Strict] judicial construction of removal statutes is to prevent exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal.")(quotation omitted); but see Tran, 290 F. Supp. 2d at 1292 ("[A] federal court should be cautious about remand, lest it erroneously deprive a defendant of the right to a federal forum.")(internal citation and quotation omitted); Legg, 428

### III. <u>Discussion</u>

As the parties have not filed any affidavits, the Court turns to the allegations in the amended complaint and Accordino's and Jackson's deposition transcripts to determine whether Wal-Mart has met its heavy burden of proving that there is "no possibility" that Accordino would be able to establish a state law claim against Jackson in his individual capacity.

In its opposition to remand, Wal-Mart correctly asserts that Florida does not recognize a claim for negligent movement of an injured person when the tortfeasor is <u>in absentia</u>. Wal-Mart further asserts that Accordino has not stated, and cannot state, any other claim against Jackson individually. Accordino responds that the Court cannot weigh the evidence to determine whether Jackson truly was <u>in absentia</u> and, in any event, Florida would recognize other claims against Jackson individually, such as negligent failure to maintain the store in a safe condition or to have policies and procedures to ensure that employees do not move injured patrons.

#### A. **Negligent Movement Claim**

In Florida, a common-law negligence cause of action is recognized for the aggravation of a plaintiff's injuries due to a defendant's movement of the plaintiff

---

F.3d 1325 ("The removal process was created by Congress to protect defendants. Congress did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it.")(internal citation and quotation omitted).

after a fall.[5]  Botte v. Pomeroy, 497 So. 2d 1275 (Fla. 4th DCA 1986).  However, in order for a defendant to be individually liable for a tort in Florida, the defendant must have committed the alleged tortious act in his individual capacity.  See, e.g., Kimmons v. IMC Fertilizer, Inc., 844 F. Supp. 738, 739, 740 (M.D. Fla. 1994)(concluding that non-diverse manager of a corporation was not liable to plaintiff where manager did not personally participate in events giving rise to plaintiff's accident and was not present at accident site at time of plaintiff's injury); McElveen v. Peeler, 544 So. 2d 270, 271, 272 (Fla. 1st DCA 1989)(finding personal participation in tortious act a prerequisite for imposing liability upon individual corporate officers or agents and rejecting liability based solely on general administrative responsibility); Orlovsky v. Solid Surf, Inc., 405 So. 2d 1363, 1364 (Fla. 4th DCA 1981)(finding that a corporate agent "does not incur personal liability for [his] torts merely by reason of his official character; he is not liable for torts committed by or for the corporation unless he has participated in the wrong").

On the face of the amended complaint, Accordino asserts that Jackson is personally liable for negligently lifting her into a wheelchair or directing her to be lifted into a wheelchair, thus aggravating her injuries.  (Doc. 2 ¶ 12.)  However, the uncontradicted evidence in the record, including the deposition transcripts, shows

---

[5]  The Court will look to Florida law, which controls the substantive issues in the action, to determine whether Accordino can establish a cause of action against Jackson.  See Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1562 (11th Cir. 1989).

that it was impossible for Jackson to have done the actions alleged, based on Jackson's testimony that he was on vacation when Accordino fell and Accordino's testimony that she did not recall Jackson being present.  Similar to Legg, where the plaintiff failed to offer evidence to dispute the defendant's sworn statement, Accordino offered no evidence contradicting Jackson's statement that he was absent on the date of Accordino's fall.  As such, there is "no possibility" that Accordino can prevail on her claim against Jackson for negligent movement.

    **B.**    **Alternative Liability Claims**

Accordino argues that the Court should look beyond the claim that was actually pled against Jackson in the amended complaint, and instead consider whether Accordino could possibly state any claims against Jackson; in other words, if there is any possibility under Florida law that Accordino can state a claim against Jackson, irrespective of whether it had been pled, the Court should not find fraudulent joinder.  Counsel for both parties urged the Court to look to the deposition transcripts, in addition to the amended complaint, to determine whether it was possible for Accordino to state a claim against Jackson.  The parties also ask the Court to consider two recent Florida personal injury cases removed to the Middle District of Florida that bear on a manager's individual liability for tortious acts taken in the course of his employment.  See Kimmons, 844 F. Supp. at 739-40; Pettibone v. Walgreen Co., No. 3:02-cv-123-J-21TEM, 2003 WL 22012202 (M.D. Fla. Feb. 18, 2003).

In Kimmons, the plaintiff filed a complaint in a Florida state court against a company and its manager after her husband was killed while servicing a company-owned bulldozer. Kimmons, 844 F. Supp. at 739. The complaint alleged that both the company and its manager breached a duty to provide a safe workplace. Id. The company removed the case, alleging fraudulent joinder of the manager, and the plaintiff sought remand. Id. Citing several Florida cases, this Court concluded that Florida recognizes a negligence claim against a corporate officer or agent only if he personally participated in the tortious conduct. Id. at 739, 740. This Court found that the manager had been fraudulently joined, explaining that the company had presented uncontradicted affidavits that the manager did not personally participate in the events giving rise to the accident, did not have knowledge of the working conditions surrounding the accident, and was not present at the facilities at the time the accident occurred. Id. at 740. This Court found "no basis in Florida law which reasonably serve[s] to impose liability upon [the manager] under the instant facts." Id.

In Pettibone, the plaintiff filed a complaint in a Florida state court against Walgreen Co. ("Walgreens") after she tripped and fell on an uneven sidewalk outside the store. Pettibone, 2003 WL 22012202, at *1. The plaintiff alleged that Walgreens negligently maintained its property and allowed a hazardous condition thereon. Id. Walgreens removed the case on the basis of diversity and the plaintiff moved for leave to add the non-diverse store manager, purportedly "responsible

-11-

for the design and maintenance of the parking lot when the alleged injuries occurred." Id. Walgreens objected to amendment, asserting that joinder of the manager was fraudulent and claiming that amendment would destroy complete diversity and require remand. Id. This Court granted plaintiff leave to add the manager under Fed. R. Civ. P. 15(a), noting that the plaintiff had "an arguable basis" for associating the manager with the design and maintenance of the sidewalk. Id. at *2. The Court concluded that "there exists the possibility that the amended complaint states a cause of action" against the manager and "[t]here is no indication the joinder would be fraudulent or made in bad faith." Id. at *2. Subsequent to the decision in Pettibone, this Court granted the plaintiff's unopposed remand motion. See Order dated May 23, 2003 (Doc. 33), Pettibone v. Walgreen Co., Case No. 3:02-cv-123-J-21TEM, United States District Court for the Middle District of Florida.

The unreported Pettibone decision and this Court's unpublished order remanding that case to state court fail to support Accordino's claims against Jackson in this case.[6] As stated above, in Florida, for an individual defendant to be liable for a tort, the defendant must have committed the alleged tortious act in his individual capacity. See Kimmons, 844 F. Supp. at 739, 740. Accordino has

---

[6] This Court's unpublished order remanding the Pettibone case to state court is less persuasive because the defendants failed to file a response to the plaintiff's motion to remand. See Order dated May 23, 2003 (Doc. 33), Pettibone v. Walgreen Co., Case No. 3:02-cv-123-J-21TEM, United States District Court for the Middle District of Florida.

failed to cite and the Court fails to find a Florida case establishing a cause of action against a manager of a retail store in his individual capacity under any of Accordino's unpled alternative claims.[7]

The uncontradicted evidence in Jackson's deposition transcript reveals that, like the manager in Kimmons, Jackson did not personally participate in the events giving rise to the accident, did not have knowledge of the conditions surrounding the accident, and was not present at the Wal-Mart store at the time the accident occurred. Nor does the deposition testimony reveal any other basis under Florida law for an individual claim against Jackson. Unlike the plaintiff in Pettibone, Accordino has failed to state "an arguable basis" upon which Jackson would be individually liable under Florida law.

After careful review of Accordino's amended complaint, the deposition transcripts, and Florida law, the Court finds that the known facts, even when

---

[7] Other jurisdictions provide persuasive authority that there is no cause of action against a store manager without personal participation in the tort. See, e.g., Adams v. Sears, Roebuck & Co., 490 S.E.2d 150, 153 (Ga. Ct. App. 1997)(finding that store manager, who was neither owner nor occupier of the Sears store, was not personally liable for injuries customer sustained as a result of falling on a hanger in the store); Griffin v. Dolgen Corp., 143 F. Supp. 2d 670, 672 (S.D. Miss. 2001)(finding grocery store manager not personally liable to plaintiff injured in slip and fall, as personal liability would have made manager personal guarantor of each customer's safety, and liability more properly belonged to store owner, who was in better position to bear costs of litigation); Dodson v. K-Mart Corp., 2004-1117, p. 12 (La. App. 3 Cir. 12/22/04; 891 So. 2d 789, 795 (finding store solely liable for fault apportioned to store's manager for injuries of customer after she fell on the store's floor because store, and not manager, was responsible for implementing system to prevent such falls).

viewed in the light most favorable to Accordino, permit no reasonable inferences to be drawn in favor of any claims against Jackson.  Though mindful of the limited jurisdiction of this Court and of the requirement of resolving all uncertainties in favor of remand, on this record, Wal-Mart has met its heavy burden of proving that there is "no possibility" that Accordino can recover against Jackson individually.

### IV.     Attorneys' Fees and Costs

Having decided not to remand and finding Wal-Mart's removal of the case proper, the Court need not consider Accordino's request for attorneys' fees and costs for Wal-Mart's alleged improper removal.

### V.     Conclusion

As Jackson was fraudulently joined, he will be dismissed as a defendant from this case.[8]  Without the inclusion of Jackson as a defendant, complete

---

[8]     Having found he was fraudulently joined, dismissal of the claims against Jackson is appropriate.  See, e.g., Smith v. Amoco Corp., No. 04-60343, 2004 WL 2008945, at *2 (5th Cir. Sept. 9, 2004)(finding that the district court committed no error in dismissing a fraudulently joined defendant from the plaintiff's personal injury action); Fowler v. Wyeth, No. 3:04-CV-83/MCR, 2005 WL 2893515, at *4 (N.D. Fla. May 14, 2005)(dismissing all claims against fraudulently joined defendants); TKI, Inc. v. Nichols Research Corp., 191 F. Supp. 2d 1307, 1316 (M.D. Ala. 2002)(dismissing a fraudulently joined defendant as a party to the case); see also Fed. R. Civ. P. 21 (stating that in the case of party misjoinder, "[p]arties may be dropped ... by order of the court ... of its own initiative at any stage of the action and on such terms that are just."); Newman-Greene, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832 (1989)("[I]t is well settled that Rule 21 invests district courts with the authority to allow a dispensable nondiverse party to be dropped at any time.").

diversity exists as between Accordino and Wal-Mart, and it is undisputed that the amount in controversy exceeds $75,000; thus, this Court has subject matter jurisdiction over the action.  Remand therefore is inappropriate.  Accordingly, it is hereby **ORDERED:**

    1.    Plaintiff's Motion to Remand (Doc. 13) is **DENIED**.

    2.    Plaintiff's request for attorneys' fees and costs is **DENIED.**

    3.    A Case Management and Scheduling Order will issue shortly.

**DONE AND ORDERED** at Jacksonville, Florida, on December 8, 2005.

_____
TIMOTHY J. CORRIGAN
United States District Judge

m.
Copies to counsel of record